IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK C. ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:25-cv-01061-STA-jay |
| v. | ) | |
| | ) | |
| KROGER LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a discrimination case based on Defendant Kroger Limited Partnership's ("Defendant" or "Kroger") alleged failure to accommodate the disability of Plaintiff Derrick C. Elliott in violation of the Americans with Disabilities Act ("ADA"). Before the Court is Defendant's Motion for Summary Judgment (ECF No. 20) on Plaintiff's claims for disability discrimination and the failure to accommodate. Plaintiff has responded in opposition, and Defendant has filed a reply brief.  For the reasons set forth below, Defendant's Rule 56 Motion is **GRANTED**.

**BACKGROUND**

Plaintiff filed his Complaint against Defendant on February 25, 2025, alleging that Defendant terminated his employment as a store manager in violation of the ADA. Following the entry of a Rule 16(b) Scheduling Order (ECF No. 13), the parties proceeded with discovery. A jury trial is currently set for August 24, 2026. Kroger now seeks judgment as a matter of law on Plaintiff's ADA claims.

1

To decide the parties' dispute, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law.  A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute."  Local R. 56.1(a).  In support of its Motion, Defendant filed a statement of undisputed facts, to which the Plaintiff has responded.  Plaintiff has submitted his own statement of additional facts, to which Defendant has responded.

As a preliminary matter, Plaintiff has argued that certain evidence cited by Defendant is not relevant to the ADA issues the Court must decide at summary judgment. Defendant cites evidence of disciplinary or performance issues related to Plaintiff's employment history with Kroger.  For example, when Plaintiff was directed not to work overnight shifts in October 2022, Plaintiff did so anyway and left a trainee alone running the Kroger store, presumably during he daytime hours. Def.'s SOF ¶¶ 23, 24. Defendant also cites evidence of an anonymous complaint against Plaintiff about unprofessional and concerning behavior at work. *Id.* ¶¶ 25, 26. The overnight shifts and the allegations of unprofessional conduct resulted in a written disciplinary

action against Plaintiff. And Defendant has cited other proof about Plaintiff's continuing foot pain and the requirements of Plaintiff's new job. *Id*. ¶¶ 81–84.

Under Federal Rule of Evidence 401, "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless prohibited by the Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id.*

The Court tends to agree with Plaintiff that Defendant has cited the evidence without showing why the earlier disciplinary issues or Plaintiff's subsequent employment are relevant. Defendant has not cited the proof as part of its argument for judgment as a matter of law on Plaintiff's ADA claims or to establish any other cause for terminating Plaintiff's employment. In fact, Defendant admits that Kroger did not terminate Plaintiff's employment for any performance-based reason. Pl.'s Add'l Fact ¶ 34. The Court will note the evidence for the record. Otherwise, the Court finds no reason to discuss the proof further as part of its analysis of the issues presented at summary judgment.

## I.    Kroger's Anti-Discrimination Policies

Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted. Defendant's Delta Division is the corporate entity operating retail grocery stores at 93 locations across five states. Def.'s SOF ¶ 1. Defendant maintains an equal employment opportunity policy, which states its commitment to providing equal opportunity in recruiting, hiring, promoting, and all other terms, conditions, and privileges of employment, and prohibits discrimination based on any protected characteristic, including disability. *Id*. ¶ 2.

Defendant also maintains an anti-harassment policy, which prohibits harassment based on an employee's disability, among other things. *Id.* ¶ 3. Under Defendant's anti-harassment policy, all employees have a responsibility to report any incidents of harassment to a supervisor, member of management, human resources, or the Kroger helpline or ethics point website. *Id.* ¶ 4. Plaintiff did not report any instances of discrimination based on any actual or perceived disability during his employment with Kroger. *Id.* ¶ 5. Plaintiff concedes each claim about Defendant's anti-discrimination policies but adds that not all of the policies are material or relevant to Plaintiff's claim that Defendant discriminated against him when it decided to terminate his employment.

## II.    Plaintiff's Employment with Kroger

During the relevant time periods at issue in the Complaint, Plaintiff was a Store Leader for Kroger. *Id.* ¶ 6. Store Leaders are the general managers of a Kroger store and are ultimately responsible for the entirety of the store, including the store's performance and personnel. *Id.* ¶ 7. Store Leaders are required to be physically present throughout the store to ensure customer and associate safety, maintain display compliance, analyze shrink opportunities, oversee and manage store staffing, retention, and turnover reduction, and to engage with and train associates. *Id.* ¶ 8. Plaintiff admits the Store Leader position requires physical presence in the store and disputes any implication that presence in the store requires prolonged standing or walking that could not be accomplished with an assistive device such as a wheelchair.

Plaintiff started his employment with Defendant in July 2017 as an Assistant Store Manager and after training became a Kroger Assistant Store Leader in a human resources role. *Id.* ¶ 9. Plaintiff worked at various Kroger locations as an Assistant Store Leader before being promoted to Store Leader in Paducah, Kentucky in late 2020. *Id.* ¶ 10. Plaintiff then became the Store Leader at Kroger's Dyersburg, Tennessee location in February 2022. *Id.* ¶ 11.

In early 2022, Plaintiff was diagnosed with Adult On-Set Still's Disease. *Id*. ¶ 12. Plaintiff went on various stints of FMLA in May and June 2022 for complications related to his Still's Disease and returned to work in July 2022. *Id*. ¶ 13. To be clear, Plaintiff admitted during his deposition that he does not allege any discriminatory act from Kroger based on his Still's Disease and does not believe he was terminated because of his Still's Disease diagnosis. *Id.* ¶ 14.

### III.    Plaintiff Utilizes a Wheelchair in 2022 After Surgery

The parties dispute some of the evidence surrounding Plaintiff's use of a wheelchair in 2022, more than a year prior to losing his job. Plaintiff temporarily utilized a wheelchair in July and August 2022 while recovering from foot surgery for an injury arising out of his Still's Disease. *Id*. ¶ 15. Plaintiff admitted he did not request an accommodation to use the wheelchair in 2022 or at any point during his employment with Kroger. *Id*. ¶ 16. While using a wheelchair, Plaintiff got up on one leg to pick up items. *Id*. ¶ 17. Kroger maintains that Plaintiff, while using a wheelchair and working as a Store Leader, was unable to perform all essential job responsibilities without regular assistance from store associates. *Id*. ¶ 18.

Plaintiff adds more context about his use of a wheelchair in 2022. According to Plaintiff, his physician released him to work without formal written restrictions after his surgery in 2022. Pl.'s Resp. to SOF ¶ 16. Plaintiff brought his own wheelchair to use while he was at work during his recuperation. Pl.'s Resp. to SOF ¶ 17; *see also* Pl.'s Add'l Fact ¶ 14. Plaintiff claims that during the two months he used a wheelchair, he continued to perform the essential functions of the Store Leader position. Pl.'s Resp. to SOF ¶ 16. District Manager Portia Frost personally observed Plaintiff working from a wheelchair during this time and raised no concerns about Plaintiff's job performance. *Id.*; *see also* Pl.'s Add'l Fact ¶ 16. In fact, Plaintiff's store received official Kroger

5

performance recognition, and Plaintiff received a merit raise during this period. Pl.'s Resp. to SOF ¶ 16; *see also* Pl.'s Add'l Fact ¶ 15.

Plaintiff takes the position that his daily use of a wheelchair in his store, particularly when observed by management, placed Kroger on notice of his need for accommodation and that a wheelchair was an appropriate accommodation for the Store Leader position. Pl.'s Resp. to SOF ¶ 18. Store Leaders manage a full staff of associates whose duties include stocking, lifting, and physical labor. Pl.'s Add'l Fact ¶ 17. Plaintiff testified that when he was using a wheelchair in 2022, associates assisted him with physical tasks. *Id*. ¶ 18. According to Plaintiff, Kroger has not shown whether the tasks for which Plaintiff requested the help of a store employee were essential functions of his job as a Store Leader or merely marginal tasks. Pl.'s Resp. to SOF ¶ 18.

On August 5, 2022, Plaintiff signed a written acknowledgement indicating that multiple fast alerts dating back to July 26, 2022, had occurred. Def.'s SOF ¶ 19. A fast alert is apparently a system to indicate when temperature-controlled foods reach an improper temperature for food safety. When a fast alert occurred, Plaintiff should have obtained the temperature of the affected product. *Id.* Because he did not, the product reached dangerous temperatures and was rendered unsafe to customers. *Id*. Plaintiff took responsibility for this incident. *Id*. Kroger estimated the lost product cost over $10,000. *Id*. ¶ 20. The incident also resulted in Defendant receiving a citation from the Tennessee Department of Agriculture for sanitary and safety issues. *Id*. ¶ 21. Defendant points out that the events took place while Plaintiff was using a wheelchair in 2022. *Id*. ¶ 22.

**IV.    Plaintiff's 2023 Foot Injury and Permanent Work Restriction to Sedentary Duty**

On February 4, 2023, Plaintiff suffered a workplace injury to his right foot when pulling a pallet jack. *Id*. ¶¶ 27, 28.[1] Plaintiff went to the doctor on February 20, 2023, and was placed on restrictions to avoid sitting, standing, walking, and driving. *Id*. ¶ 29. When Plaintiff continued to suffer foot pain, he returned to the physician's office on July 6, 2023. *Id*. ¶¶ 30–31. The physician, Dr. Lochemes, noted that Plaintiff reported "good days and bad days regarding his right foot." *Id*. ¶ 32. Dr. Lochemes placed Plaintiff on sedentary work status. *Id*. Plaintiff returned to Dr. Lochemes on October 17, 2023. *Id*. ¶ 33. Dr. Lochemes changed Plaintiff's work status to "permanent restrictions: sedentary duty." *Id*. ¶ 34. Dr. Lochemes released Plaintiff and stated he had reached maximum medical improvement ("MMI"). *Id*.

On October 31, 2023, Sedgwick Claims Management Services, Inc. claims adjuster Gayle Jencen emailed Wes Pitt in Kroger Associate Relations, concerning Plaintiff's MMI and permanent restrictions. *Id*. ¶ 35. After receiving Plaintiff's medical documentation and his permanent sedentary duty restriction, Pitt concluded that Defendant had no other positions within Kroger's Delta Division that would fit a sedentary duty restriction. *Id*. ¶ 36. Plaintiff adds that although Pitt testified he could not "locate" any other positions, he also testified that he actually did not log on and look for other positions to accommodate Plaintiff. Pl.'s Resp. to SOF ¶ 36; *see also* Pl.'s Add'l Fact ¶ 21.

## V. Kroger's Standardized Job Classifications and Written Job Descriptions

The parties next brief Kroger's standardized job classifications and written job descriptions. Plaintiff argues that the documents do not, by themselves, establish the essential

---

[1] Defendant adds that Plaintiff uses his right foot to drive, though without showing why this fact is relevant to the ADA issues. There is no other evidence that operating a vehicle was one of the job duties of a Kroger Store Leader. The evidence has some relevance to Plaintiff's request for a transfer.

functions of any particular job or that using the documents to compare their job descriptions with an individual employee's work restrictions fully complies with the ADA's requirements. Be that as it may, the dispute is one that the Court will address as part of its legal analysis of the issues presented. For purposes of ascertaining whether a genuine factual dispute exists, there is no dispute about the actual contents of Kroger's company documents.

Kroger maintains Physical Demands Level Definitions for each job position offered by the company. Def.'s SOF ¶ 37. In determining whether an employee may be accommodated, Wes Pitt in Associate Relations analyzes the essential job functions and physical demands analysis of a position. *Id.* ¶ 38. Kroger also publishes the essential job functions for each job position. *Id.* ¶ 39. Kroger's job descriptions provide a general overview of what duties employees can expect to perform in each position. *Id.* ¶ 40.

Kroger published a job description for the Store Leader position, which includes a list of job functions. *Id.* ¶ 41. Wes Pitt testified that the essential functions of the Store Leader position could not be completed while on sedentary duty, as the position required employees to be physically present throughout the store and engage in physical duties, such as constantly walking, standing, stooping, and lifting. *Id.* ¶ 42. Plaintiff adds that Pitt admitted he did not explore whether a wheelchair (an accommodation Plaintiff had successfully used in the Store Leader role for approximately two months) might enable Plaintiff to perform the duties of the position. Pl.'s Resp. to SOF ¶ 42.

Kroger also maintains a Physical Demand Analysis of the Store Leader role. Def.'s SOF ¶ 43. The Store Leader Physical Demand Analysis states that Store Leaders stand and walk for approximately ten and a half hours each shift, while Store Leaders are expected to sit for approximately 90 minutes per shift. *Id.* ¶ 44. Plaintiff testified he spent approximately 60 to 70

percent of his shift walking or standing in his position as Store Leader and sat for approximately 90 minutes during his shifts. *Id*. ¶ 45. The Store Leader Physical Demands Analysis states that Store Leaders lift and carry items averaging five to ten pounds, and up to fifty pounds, throughout the store. Def.'s SOF ¶ 46. Plaintiff recalled frequently lifting items up to 50 pounds while he was a Store Leader. *Id*. ¶ 47.

The Store Leader Physical Demands Analysis further states that Store Leaders push/pull objects such as pallet jacks, grocery and flatbed carts, and u-boats throughout the store. *Id*. ¶ 48. Plaintiff pushed and pulled items such as pallet jacks, grocery carts, flatbed carts, and u-boats daily during his time as Store Leader. *Id*. ¶ 49. The Store Leader Physical Demands Analysis also states that the position requires a medium aptitude for ambulation stamina, and requires climbing, bending, squatting, kneeling, and extended reaches. *Id*. ¶ 50. Plaintiff climbed stairs daily during his time as Store Leader; his office was upstairs. *Id*. ¶ 51. Plaintiff also bent, squatted, kneeled daily, and performed extended reaches. *Id*. ¶ 52.

Plaintiff raises a number of arguments about Defendant's Store Leader Physical Demands Analysis. First, Plaintiff admits that he gave this testimony about his daily work but points out his testimony was describing his workday when fully ambulatory. Pl.'s Resp. to SOF ¶ 45. Second, Plaintiff claims that he was not provided with a copy of the document during his employment with Kroger. *Id*.; *see also* Pl.'s Add'l Fact ¶ 23. Third, Plaintiff challenges the implication that the document is somehow dispositive of the ADA inquiry. Pl.'s Resp. to SOF ¶ 45. Rather than being the result of an individualized assessment, the document contains standardized classifications. Plaintiff believes he performed the essential functions of the job in 2022 while using a wheelchair for approximately two months. *Id*. What constitutes an essential function of the Store Leader position remains a question of fact. And the fact that the Store Leader's office was upstairs does

not address whether a workplace modification was a reasonable accommodation or an undue hardship. Finally, while Plaintiff did perform some of the tasks described at times when he was fully ambulatory, Plaintiff maintains that some tasks were only incidental to the Store Leader role and that the Store Leader could delegate tasks to the associates under his supervision. *Id*.[2]

The parties dispute whether the published Kroger job description for the Store Leader position lists any physical requirements among the position's essential functions. Plaintiff denies that it does. Pl.'s Add'l Fact ¶ 26. Defendant counters that the job description lists essential functions which require physical capabilities, such as travel of up to 25 percent. Def.'s Resp. to Add'l Fact ¶ 26. There is no dispute, however, that the job description does not list any requirement to lift a certain amount of weight. Pl.'s Add'l Fact ¶ 27. Plaintiff testified that he could do all the essential job functions of the Store Leader position with or without reasonable accommodations. *Id*. ¶ 33.

Kroger District Human Resource Leader Gerald Jones, who was previously a Store Leader for several years in Kroger's Delta Division, did not believe it was possible to work the Store Leader position with a sedentary duty designation based on the physical demands of the position. Def.'s SOF ¶ 53. Kroger Store Leader Laura Fields agreed that she did not believe it was possible to work the Store Leader position with a sedentary duty designation based on the physical demands of the position. *Id*. ¶ 54. Wes Pitt himself previously worked in the Store Leader position and did not believe it was possible to work that position with a sedentary duty designation based on the physical demands of the position. *Id*. ¶ 55. Plaintiff disputes the notion that any one person's lay opinion about the requirements of the position is dispositive. Plaintiff adds that Pitt admitted using

---

[2] Plaintiff asserts that Pitt did not reference the Physical Demands Analysis during his termination call with Plaintiff. Pl.'s Add'l Fact ¶ 24. As Defendant correctly notes, the testimony cited does not actually support the claim.

a wheelchair "could be" a reasonable accommodation for a store manager. Pl.'s Resp. to SOF ¶¶ 53–55.

### V.        Pitt's November 8, 2023 Meeting with Plaintiff and Plaintiff's Termination

Wes Pitt determined that Plaintiff was unable to return to his position as Store Leader. Def.'s SOF ¶ 56. On November 8, 2023, Pitt met with Plaintiff about Plaintiff's employment status. *Id*. ¶ 56. Defendant describes the meeting as the interactive process required by the ADA; Plaintiff characterizes it as a "sham meeting held to communicate a predetermined conclusion (termination) in order to check a box for potential litigation." Pl.'s Resp. to SOF ¶ 56. Plaintiff testified the meeting included conversation about several positions. Def.'s SOF ¶ 57. Pitt informed Plaintiff his medical restriction did not meet any of the requirements for the positions discussed.  *Id*. ¶ 58.

Specifically, Plaintiff proposed working as the Memphis Area Store Coordinator or as an Operations Field Specialist in two different Kroger districts. *Id*. ¶¶ 59–61. Plaintiff had never previously been employed as a Store Coordinator or Operations Field Specialist. *Id*. ¶ 62. There is a dispute of fact over whether these positions were open at that time. Both parties disagree over which of them has the burden to show that the job(s) were open.

Kroger's published job description for Field Operations Specialist includes the essential functions for the position. *Id*. ¶ 64. Operations Field Specialists are responsible for entire Kroger stores and oversee a group of store teams that work operationally within each Kroger store. *Id*. ¶ 65. Operations Field Specialists are required to physically spend time within the stores coaching, developing, and working with store teams. *Id*. ¶ 66. The Operations Field Specialist position requires frequent walking, standing, stooping and bending, and requires travel up to 75 percent of the time, which also required walking and standing. *Id*. ¶ 67. Plaintiff adds that the job is up to 75 percent travel, meaning the incumbent will be seated in a vehicle. Pl.'s Resp. to SOF ¶ 67.

11

Kroger also published a job description for the Center Store Coordinator position. Def.'s SOF ¶ 68. Center Store Coordinators are responsible for the grocery, dairy/frozen, and general merchandise of the store. *Id*. ¶ 69. If a Kroger store falls below standards, the Center Store Coordinator is required to take corrective actions such as emptying the back room, organizing the back room, ensuring product gets shipped in/out, conducting a full overhaul of the sales floor, removing fixtures, shipping around displays, merchandising displays, building displays, and tearing down displays. *Id*. ¶ 70. Plaintiff asserts that the tasks listed presuppose an exceptional corrective scenario (a store falling below standards), not routine daily duties. Pl.'s Resp. to SOF ¶ 70.

Pitt informed Plaintiff during their November 8, 2023 conversation that Kroger was unable to place him in these positions due to his permanent sedentary duty restriction, as none of the positions were sedentary duty positions. Def.'s SOF ¶ 71. Plaintiff did not request a position that would allow him to sit for the entirety of his shift, such as a greeter. *Id*. ¶ 72.

### VI.    Whether Plaintiff Requested an Accommodation and Plaintiff's Charge of Discrimination

The parties disagree over whether Plaintiff made a request for an accommodation during his employment with Kroger. Defendant takes the position that he did not. *Id*. ¶ 74. Specifically, Plaintiff did not request to use a wheelchair during the discussion with Pitt. *Id*. ¶ 73. Plaintiff admits as much. But Plaintiff argues that the ADA does not require a request for accommodation to take any specific form. Plaintiff posits that his "de facto wheelchair use, openly observed by District Manager Portia Frost, constituted meaningful notice of his use of an accommodation and his need for one." Pl.'s Resp. to SOF ¶ 74. Plaintiff also states that asking about other available positions constituted a request for accommodation. Pitt was unaware of Plaintiff's previous use of a wheelchair. Def.'s SOF ¶ 75.

12

Plaintiff did not offer to get a secondary medical opinion during his November 2023 conversation with Pitt. *Id.* ¶ 76. On February 4, 2024, Plaintiff's doctor indicated that Plaintiff was still restricted from performing work which required standing/walking for prolonged periods of time. *Id.* ¶ 77.

Plaintiff filed a Charge of Discrimination against Kroger on February 8, 2024. *Id.* ¶ 78.  In this charge, Plaintiff stated that he was denied a "reasonable accommodation for me not to stand or walk for a long period of time." *Id.* ¶ 79. However, Plaintiff admitted during his deposition that the medical restrictions were only for sedentary duty and did not mention any other accommodation. *Id.* ¶ 80.

### VII.    Plaintiff's Statement of Additional Facts

Plaintiff has asserted the following additional facts and argues that they show a genuine dispute remains for trial. Wes Pitt was the person who decided that Kroger could not reasonably accommodate Plaintiff's restrictions and made the decision to terminate him. Pl.'s Add'l Fact ¶ 1; *see also* ¶ 9[3], ¶ 11.  While Defendant asserts the November 8, 2023, meeting was "the ultimate determining factor on whether [Kroger] could accommodate or not," Plaintiff asserts Pitt had already concluded that Plaintiff would be terminated due to his medical restrictions. *Id.* ¶ 2. The so-called interactive process meeting and Plaintiff's termination occurred on the same day, November 8, 2023. *Id.* ¶ 3.

Pitt filled out the Return to Work Evaluation Form and checked "yes" that there had been a "face-to-face/phone conference call with the associate to discuss possible reasonable

---

[3] Plaintiff also claims "Pitt did not consult with any medical professional, human resources specialist, or vocational expert in connection with his accommodation determination." Pl.'s Add'l Fact ¶ 9. But Pitt just testified that he alone made the determination about the lack of any reasonable accommodation for Plaintiff and therefore decided to terminate his employment.

accommodations." *Id*. ¶ 4. When asked directly at his deposition whether he had discussed possible reasonable accommodations with Plaintiff during the November 8 meeting, Pitt testified: "I did not." *Id*. ¶ 5. Pitt did not consult with Plaintiff prior to the November 8 meeting before reaching his conclusion that no accommodation was possible. *Id*. ¶ 6. Another Kroger employee Luis Loza was present on the call and testified that "no accommodations" were discussed during the meeting, only the doctor's note. *Id*. ¶ 7a. Loza did not recall any discussion of alternative job openings. *Id*.

The parties disagree over what information Pitt actually considered in assessing Plaintiff's ability to perform other jobs. Plaintiff asserts Pitt's accommodation analysis consisted of comparing Plaintiff's sedentary restriction label to written job descriptions and the Physical Demands Analysis. *Id*. ¶ 7b. Plaintiff cites Pitt's deposition testimony that he reviewed no other documents and conducted no further individualized inquiry into Plaintiff's actual functional capabilities. *Id*. Defendant answers Pitt also testified that Kroger had received a medical note dated October 17, 2023, which included the doctor's opinion about Plaintiff's work restriction to sedentary jobs only. While the testimony cited does state that Kroger had the doctor's note, Pitt's testimony does not support Defendant's characterization that Pitt "received Plaintiff's medical documentation and analysis from Plaintiff's doctor." Def.'s Resp. to Add'l Fact § 7b. The proof does not show whether Pitt reviewed "medical documentation and analysis," only that Pitt knew the doctor had given Plaintiff a work restriction.

Pitt did not ask Plaintiff during their November 2023 meeting whether the use of a wheelchair might be a reasonable accommodation. Pl.'s Add'l Fact ¶¶ 8, 12. [4] A dispute exists

---

[4] Plaintiff also asserts that "Pitt did not explore whether any duties of the Store Leader position or any alternative position could be restructured, modified, or delegated to other employees as part of a reasonable accommodation." Pl.'s Add'l Fact ¶ 8. Defendant correctly objects that the deposition testimony cited does not support Plaintiff's claim. Pitt testified that he

over whether Pitt conducted an individualized inquiry into Plaintiff's actual capabilities, sought a functional capacity evaluation, explored whether tasks could be restructured or delegated, or conducted a systematic search for vacant positions in the division. *Id.* ¶ 10. While admitting that Pitt did not seek a functional capacity evaluation, Defendant posits that Plaintiff's doctor conducted an individualized inquiry into Plaintiff's medical condition. Def.'s Resp. to Add'l Fact ¶ 10. Pitt did not believe the use of a wheelchair would be consistent with Plaintiff's work restriction to sedentary duty. *Id.*[5] Defendant concedes that Pitt did not conduct a systematic search for vacant positions in the division. *Id.*; *see also id.* ¶ 19. The parties also dispute whether Pitt made his determination about the lack of reasonable accommodation without input from Plaintiff. Pl.'s Add'l Fact ¶ 11. Defendant takes the position that the meeting itself constituted an interactive process.[6]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for

---

never asked Plaintiff about using a wheelchair as an accommodation and that he was not aware Plaintiff had previously used a wheelchair in 2022 until he learned about it during the litigation.

[5] *See also* Pl.'s Add'l Fact ¶ 13 and Def.'s Resp.

[6] Plaintiff has also cited proof about accommodations Defendant granted to another employee with a work restriction. Defendant argues that the evidence is immaterial and irrelevant. Because Plaintiff has not shown why his is an ADA case based on a comparator, the Court finds that the proof is not relevant.

15

summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

### I.   Disability Discrimination in Violation of the ADA

The ADA includes a "general ban on disability-based employment discrimination." *Tumbleson v. Lakota Local Sch. Dist.*, 175 F.4th 773, 779 (6th Cir. 2026). The "general ban" states as follows: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To "discriminate against a qualified individual on the basis of disability" is defined to include the employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"

16

unless the accommodations would "impose an undue hardship" on the employer's operations. § 12112(b)(5)(A).

Plaintiff's Complaint alleges that Defendant is liable for disability discrimination in violation of the ADA. It is not clear from the pleading whether Plaintiff alleged solely a failure-to-accommodate claim or both Defendant's failure to accommodate and a disability discrimination claim under a disparate treatment theory. Defendant seeks judgment as a matter of law on both claims for relief, a disability discrimination claim under a disparate treatment theory and a failure-to-accommodate claim. Defendant's opening brief addresses the tests for disability discrimination under a direct evidence theory and an indirect or circumstantial evidence theory and then goes on to discuss the different test applicable to a claim for the failure to accommodate. *Tumbleson*, 175 F.4th at 780 (citing *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) and remarking the Sixth Circuit uses the *McDonnell Douglas* burden-shifting framework to analyze a disability discrimination claim based on disparate treatment).

In response to Defendant's Motion for Summary Judgment, Plaintiff did not address Defendant's arguments for the dismissal of a disparate treatment disability discrimination claim. *See* Def.'s Reply 6–7 (ECF No. 22) ("In his Response, Plaintiff does not attempt to establish a prima facie case of disability discrimination, rather, he focuses solely on Kroger's alleged failure to accommodate."). When a party "fails to address [an argument] in response to a motion for summary judgment," the argument is deemed waived. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citations omitted). And when a party waives its opposition to an argument, "district courts in this Circuit grant summary judgment as a matter of course." *Id.* (collecting cases). Therefore, Defendant's Motion for Summary Judgment is **GRANTED** on Plaintiff's disability discrimination claim based on a disparate treatment theory.

**II. Failure to Accommodate in Violation of the ADA**

Having addressed this preliminary issue, the Court now turns to the merits of the parties' arguments on Plaintiff's ADA claim for the failure to accommodate. Courts employ a "direct evidence test" in ADA failure-to-accommodate cases. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416–17 (6th Cir. 2020); *Tchankpa v. Ascena Retail Grp., Inc.,* 951 F.3d 805, 811 (6th Cir. 2020). Under the direct evidence test, the employee has the initial "the burden of establishing (1) that he is disabled, and (2) that he is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Fisher,* 951 F.3d at 417 (quoting *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868 (6th Cir. 2007)). The employer then has the burden to prove that "a challenged job criterion is essential, and therefore, a business necessity, or that a proposed accommodation will impose an undue hardship" for the employer's business. *Id.*

Plaintiff alleges that Defendant failed to accommodate him in two ways: (1) by failing to return him to his job as a Kroger Store Leader and (2) by failing to transfer him to another position with the company. "Failure-to-accommodate cases typically fall into two broad categories: (1) cases where the plaintiff does not want an accommodation but instead makes the straightforward claim that he can do his job as it exists; and (2) those in which the plaintiff challenges a particular job requirement as unessential or claims that he or she can do the job with reasonable accommodations on the part of the employer." *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 369 (6th Cir. 2024) (cleaned up).

Plaintiff's case is of the second variety. Plaintiff does not argue that he could have done his job as a Store Leader without an accommodation. Plaintiff argues that he could have continued to work as a Store Leader with accommodations, namely, using a wheelchair for mobility and the

18

elimination or delegation of certain non-essential job responsibilities. In the alternative, Plaintiff argues that he could have performed the essential job functions of some other position with Kroger. The Court considers each theory in turn.

### A. Working as a Store Leader With Reasonable Accommodations

The Court begins its failure-to-accommodate analysis with Plaintiff's claim that he was "otherwise" qualified for his position as Store Leader with reasonable accommodations. There is no real dispute for purposes of summary judgment that Plaintiff was disabled. There is a dispute over whether Plaintiff was "otherwise qualified" for his position as a Kroger Store Leader and whether his proposed accommodations would have permitted him to perform the essential functions of the job. That is a dispute the Court need not resolve in order to decide Defendant's Motion for Summary Judgment.

The determinative issue presented on Plaintiff's failure-to-accommodate claim concerning his job as a Store Leader is whether Plaintiff requested an accommodation. The Court of Appeals has held that an employee has the burden to show that he requested an accommodation. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020). "There is some flexibility in how an employee may do this." *Woodie v. Motorola Solutions, Inc.*, No. 24-3267, 2025 WL 754544, at *2 (6th Cir. Mar.10, 2025) (citing *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022)). "Magic words" like "accommodation" or "disability" are not required. *Fisher*, 951 F.3d at 419 (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)). The question is whether "a factfinder could infer that [the employee made] a request for an accommodation." *Id.* As the employee, Plaintiff has the burden to show that accommodation he proposed "seems reasonable on its face." *Blanchet v. Charter Comm'ns, LLC*, 27 F.4th 1221, 1229

(6th Cir. 2022) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

Plaintiff argues that he could have performed his job as a Store Leader with the aid of a wheelchair. The problem is that Plaintiff points to no evidence he ever requested an accommodation to continue working as a Kroger Store Leader with the use of a wheelchair. As the Sixth Circuit has remarked, "a plaintiff may not rely on accommodations that he did not request." *Manigan v. Sw. Ohio Regional Transit Auth.*, 385 F. App'x 472, 478 n.5 (6th Cir. 2010) (citing *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 518 (6th Cir. 2002)). "The failure to engage in the interactive process is only actionable if a qualified employee establishes a prima facie showing that [he] proposed a reasonable accommodation." *Vaughn v. Parkwest Med. Ctr.*, 716 F. App'x 428, 434 (6th Cir. 2017) (citations omitted). Without a specific request for using the wheelchair as an accommodation, "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.*

The parties have cited no evidence to show that Plaintiff ever asked Defendant about using a wheelchair as an accommodation to allow him to continue in his job as a Store Leader. Plaintiff concedes that he does not recall whether he ever mentioned the possibility of using a wheelchair during his meeting with Wes Pitt in November 2023. Elliott Dep. 60:9–18 (testifying that he did not recall discussing the use of a wheelchair). Pitt denied that Plaintiff ever "suggest[ed] using a wheelchair" during their meeting. Pitt Dep. 115:22–24. This lack of proof forecloses Plaintiff's claim that Defendant failed to accommodate his disability when Defendant did not consider allowing Plaintiff to continue working as a Store Leader with the use of a wheelchair.

Without any evidence to show that Plaintiff discussed using a wheelchair as an accommodation with Pitt, Plaintiff falls back to what he dubs a "de facto" request for the same

20

accommodation. He cites his use of a wheelchair during a two-month period while he recovered from surgery in 2022. Plaintiff asserts that he was able to do the job in 2022 while using a wheelchair to move around the store. According to Plaintiff, Defendant had something like constructive notice of the fact through another managerial employee who observed Plaintiff doing his job in a wheelchair.

Even under the ADA's lenient view of what constitutes a "request for accommodation," the Court finds this argument unconvincing. Plaintiff has cited no legal authority to support the proposition that an employee requests an accommodation by implication from facts that occurred more than a year prior and which facts were never made known to the decisionmaker in the employee's case. The undisputed proof shows that Wes Pitt did not know Plaintiff had used a wheelchair for mobility in 2022 and that Plaintiff never referred to his previous use of a wheelchair as part of his meeting with Pitt in 2023. Therefore, Plaintiff has not carried his initial burden to prove a failure-to-accommodate claim premised on the accommodation of using a wheelchair. *Cooper*, 93 F.4th at 372.

**B. Transfer to Another Position as a Reasonable Accommodation**

What Plaintiff has shown is that during their November 2023 meeting, Plaintiff and Pitt discussed the possibility of a transfer to another position with the company. The ADA defines "reasonable accommodation" to include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). To establish a failure to accommodate in the context of a job reassignment or transfer, a plaintiff must show either that "he requested, and was denied, reassignment to a position for which he was otherwise qualified" or that "he requested and was denied some specific assistance in identifying jobs for which he could qualify." *Fisher*, 951 F.3d at 419 (citing *Burns v. Coca-Cola Enters. Inc.*, 222 F.3d 247, 258 (6th Cir. 2000)). "If the employee notifies the employer of this

willingness to transfer, the employer must try to find an open position that the employee could perform." *Smith v. Newport Utils.*, 129 F.4th 944, 952 (6th Cir. 2025). As the Court of Appeals has noted, "to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position." *Id*. (quoting *Kleiber*, 485 F.3d at 870).

The evidence, viewed in a light most favorable to Plaintiff, shows that he inquired about a transfer to two different types of positions with Kroger, the Memphis Area Store Coordinator and a Operations Field Specialist. The ADA imposes a duty on an employer "to ascertain whether he has some job that the employee might be able to fill," once an employee asks for "assistance in identifying vacant positions." *Fisher*, 951 F.3d at 419 (citation omitted).  However, the burden is on the employee to "show that an open position existed and that they qualified for it to overcome an employer's summary-judgment motion." *Smith*,129 F.4th at 953 (citation omitted).

Plaintiff has carried his burden on the first point to show that an open position existed. A proposed transfer to another position is only a reasonable accommodation if the position is vacant. *Cooper*, 93 F.4th at 373 (citing 42 U.S.C. § 12111(9)(B)). Plaintiff testified that Pitt told him during their meeting the positions in question were available. Elliott Dep. 56:19–57:3 (ECF No. 21-2). For his part, Pitt testified that he believed there was more than one open position as a Store Coordinator in November 2023. Pitt Dep. 112:21–113:8. Assuming there were vacancies for both types of jobs at that time, this satisfies Plaintiff's burden to prove the positions were available.

The question becomes then has Plaintiff shown that he was qualified for the positions, either as a Center Store Coordinator or Operations Field Specialist? Defendant argues that Plaintiff was not qualified for either type of job because the essential job functions of both positions were incompatible with Plaintiff's sedentary work restriction.

"A job function is essential if removing the function would fundamentally alter the job." *King*, 30 F.4th at 560 (cleaned up) (quoting *EEOC v. Ford Motor Co.*, 782 F.3d 753, 762 (6th Cir. 2015) (en banc)). Under the ADA regulations, the following list of non-exclusive factors are relevant in determining whether a job duty is an essential function: "(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions . . .; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3). The ADA's regulations add that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* "Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013).

The Court holds that Plaintiff's request to transfer to an open position did not constitute a reasonable accommodation under the circumstances because Plaintiff's work restriction prevented him from completing the essential functions of either job. Take the Field Operations Specialist position first. According to Kroger's job description for the position, Operations Field Specialists work throughout a Kroger store, managing entire teams of store employees. Obviously, an Operations Field Specialist is expected to be physically present in the store and should have the ability to move around the store. As the Court has already noted, Plaintiff never asked Kroger about using a wheelchair while carrying out his responsibilities. Without a mobility aid, Plaintiff

23

could not perform the essential functions of an Operations Field Specialist. Therefore, Plaintiff's transfer to an open Operations Field Specialist job was not a reasonable accommodation.[7]

Plaintiff's proposal to move over to a Center Store Coordinator position fares no better. The job description for a Center Store Coordinator indicates that the incumbent has in-store responsibility for Kroger's grocery areas, dairy/frozen areas, and general merchandise. The Center Store Coordinator is tasked with identifying the need for corrective action in a Kroger store and working to see that corrective actions are completed. That might include emptying or organizing a back room or making physical changes to the sales areas and displays located in the store. While it may be the case that some duties are required only when the store falls below a company standard for its store space, the fact is the position entails physical presence and mobility around all phases of the store. Plaintiff has not shown then why a transfer to a Center Store Coordinator position would have been a reasonable accommodation for an employee with a sedentary work restriction.

At the end of the day, Kroger was not required to "eliminate the essential functions of open positions, fire other employees to manufacture such openings, or create new positions" to satisfy the requirements of the ADA. *Smith*,129 F.4th at 952–53. Without evidence to show that he could perform the essential functions of the jobs he sought, Plaintiff has not proven an essential element of his failure-to-accommodate claim based on his request for a transfer.

To avoid this outcome, Plaintiff focuses his argument on the interactive process. Plaintiff argues that Defendant failed to engage in the interactive process in good faith by not considering the possible accommodation of using a wheelchair or other modifications to his job as a Store

---

[7] The parties also cite proof about the job requirement to travel up to 75 percent of the time. There is no evidence to show that Plaintiff could not operate a vehicle or that his sedentary work restriction meant he could not drive as part of his job. The Court finds no evidence then that the travel requirement would have prevented Plaintiff from performing that function of the job.

Leader.  To the extent that Defendant considered reassigning Plaintiff to another position, Plaintiff highlights evidence that Pitt never actively reviewed each and every open position with Kroger before reaching the conclusion that Defendant had no alternative job for Plaintiff.

"An employer is required 'to initiate an informal, interactive process' when necessary to determine how an employee's disability limits her ability to work and to identify appropriate reasonable accommodations." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (quoting 29 C.F.R. § 1630.2(o)(3)). "[O]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hrdlicka*, 63 F.4th at 571 (citations omitted). The interactive process should involve "an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question." *Root v. Decorative Paint, Inc.*, No. 23-3404, 2024 WL 4024426, at *4 (6th Cir. Sept. 3, 2024) (quoting *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000)). The interactive process exists to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Hrdlicka*, 63 F.4th at 571–72.

The Court holds that Plaintiff has not shown why the ADA entitles him to relief for Defendant's supposed failure to engage in the interactive process. Plaintiff characterizes his telephone meeting with Pitt as a meeting to announce a predetermined outcome, not a genuine interactive process. Be that as it may, Defendant's duty to engage in the interactive process was only triggered once Plaintiff made a request for a reasonable accommodation.

The employer's duty to engage in the interactive process becomes "an independent violation of the ADA only if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Id.* at 572 (cleaned up). The evidence shows that Plaintiff never

25

proposed using a wheelchair, either as a reasonable accommodation to carry out his duties as a Store Leader or as a reasonable accommodation in another job with Kroger. After Plaintiff made a request for another job, Pitt discussed the suitability of a transfer to one of the positions Plaintiff identified. As the Court has already found, Plaintiff could not perform the essential functions of the alternative jobs and therefore did not propose a reasonable accommodation. *See Ford Motor*, 782 F.3d at 763 ("In failure-to-accommodate claims where the employee requests an accommodation that exempts her from an essential function, the essential functions and reasonable accommodation analyses run together.").

Plaintiff also faults Pitt for relying on the medical restrictions adopted by Plaintiff's treating physician and the fact that Plaintiff was restricted from performing anything other than sedentary duty. But Defendant was entitled to rely on the medical restriction adopted by Plaintiff's treating physician. *Gearhart v. E. I. du Pont de Nemours and Co.*, 833 F. App'x 416, 428 (6th Cir. 2020) (holding that an employer engaged in the interactive process in good faith when it relied on a physician's medical opinion about an employee's health limitations). And Plaintiff did not contest then and does not dispute now that his physician's opinion to restrict Plaintiff to sedentary work was somehow erroneous. *Id*. ("[A]s part of the interactive process, Gearhart could have provided DuPont with a medical opinion allowing him to work in an oven.").

In the final analysis, Plaintiff never asked about using a wheelchair as a mobility device, either in his current role as a Store Leader or in some other store-based position with Kroger. For the reasons the Court has already explained, Plaintiff has not shown that he requested a reasonable accommodation. Under the circumstances, Plaintiff cannot show that Kroger failed to engage in an interactive process in good faith.

## CONCLUSION

No genuine dispute of material fact remains for trial on Plaintiff's ADA claim against Defendant for the alleged failure to accommodate his disability. Plaintiff cannot show that he proposed a reasonable accommodation, either the use of a wheelchair to assist him in performing his duties as a Kroger Store Leader or a transfer to another suitable position. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter judgment.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  June 18, 2026.